Kennon, J.
The original suit was commenced June, 1849, and judgment was rendered in December, 1849, in favor of the defendant in error for over $19,000
285] *On the trial the plaintiff below offered in evidence, a note of L. Pugh, dated April 22, 1839, payable to the order of Thomas Holliday & Co., at ninety days, for over $10,000. Also the draft of L. Pugh, dated April 23, 1839, at five months, for $6,000, drawn on Joseph Landis & Co., with a credit thereon, December 31, 1839, of $3,630.
*286 On the trial, Joseph Marks testified that on the 21st of September, 1839, ho presented the bill for acceptance, and was answered that it conld not be accepted. He then notified L. Pugh, by notice in print and writing, informing him of the protest, and that the holders of the draft looked to him for payment. The fact of his protesting it he does not prove.
On September 26, 1839, he presented the bill for payment and was answered that it could not be paid. He then protested it in the usual form, and according to law, for non-payment, and notified L. Pugh of the protest by notice deposited on the same day in the post-office.
This deposition was objected to by the counsel for the defendant, but was permitted to be read, except so much thereof, or such part of the same as undertakes to state the contents of the protest for non-acceptance “ in the usual form according to law,” which was excluded by the court.
The protest for non-payment was read in evidence. Charles Duffield proved, that from 1838 to 1840, Thomas Holliday & Co. were Thomas, William, and Lewis P. Holliday, residing in Kentucky.
The defendant then gave in evidence a record and agreement, • showing that the amount of credit indorsed on the bill, was obtained under an attachment of Lot Pugh’s property in New Orleans, commenced September 21, 1839, and without his consent.
The defendant below further proved, by W. E. Johnston, and the record in bankruptcy, that William Holliday, of the plaintiffs’ firm, took the benefit of the bankrupt law in Kentucky, filing his petition December 21, 1842, and being declared a bankrupt November 11, 1844; that Bobert Campbell was appointed assignee in bankruptcy ; that a final ^decree was entered in the case; that [286 William Holliday, in his inventory, dated December 1, 1842, put as part of his property one-sixth of a debt of $15,000, against Lot Pugh. ■
The plaintiffs below, as rebutting testimony, then introduced a paper purporting to be an assignment of these claims by William Holliday, dated September 10,1839. The witness proved the handwriting of William Holliday, but knew nothing of an actual assignment, or the time when the paper was executed by William Holliday.
This is substantially a statement of the case as made in the brief *287 of the counsel for the plaintiff in error, and which the counsel for defendant in error says is a correct statement.
It seems that the case, in the Commercial Court was tried hy the court, and not by a jury. The foregoing statement contains all the evidence which was considered material for a determination of this case. A bill of exceptions was taken setting out the whole of tha testimony. After judgment, or the finding for the plaintiffs below a motion was made for a new trial and overruled by the court; to the overruling of this motion plaintiffs in error excepted. The principal grounds for the new trial were, that the .finding of the court was contrary to the evidence, and that judgment should have been rendered for the plaintiff in error instead of the defendant in error.
It becomes necessary, therefore, to look into the whole evidence; but without stating the whole, and without deciding whether the court erred in permitting the deposition to be read, or so much thereof as the bill of exceptions shows was read, we will suppose that the deposition was properly admitted by the court, and that the plaintiffs made out in the first instance, and before they rested, a proper case for recovery. The defendant then proved, by evidence which can not be doubted, and the truth of which we apprehend the Commercial Court of Cincinnati did not doubt, that before the commencement of this suit, William Holliday, one of the plaint-287] iffs, petitioned for the benefit of the bankrupt law; that *an assignee was appointed, and a final decree in bankruptcy made by the proper court. If no further evidence had been offered, the court could not legally have found for, and entered judgment for the plaintiff, for the reason that William Holliday had no interest in these claims, and could not be made a co-plaintiff with Thomas and Lewis Holliday. The suit should have been brought in the name of Thomas Holliday, Lewis Holliday, and the assignee in bankruptcy. By the third section of the act of Congress, passed in 1841, to establish a uniform system of bankruptcy throughout the United States, it is provided: “ That all property and rights of property of every kind and description, whether real, personal, or mixed, of every bankrupt, who* shall, by decree of the proper court, be declared to bo a bankrupt within this act, shall by mere operation of law, ipso facto, from the time of such decree, be deemed to be divested out of such bankrupt, without any other act, assignment, or conveyance whatsoever; and the same shall be vested by force of *288 such decree in such assignee as from time to time shall be appointed by the proper court for this purpose.”
The mere reading of this section would be enough to show that all the legal and equitable interest of William Holliday in the subject of the suit was vested in his assignee, and that he was totally divested of any interest therein, and could not therefore be a party plaintiff to the suit.
But, under the above-recited section, as well as under a similar section of the,English act, it has been uniformly held, both in England and America, that when the bankrupt was a member of a firm, Or jointly interested with another in the subject of the action, the suit must be brought in the name of the assignee in bankruptcy, and the remaining members of the firm, or the persons jointly interested in the subject-matter of the action. They become tenants in common, and must unite in the action.
It is wholly unnecessary to cite authorities to support this doctrine. It is not denied by counsel for the defendant in error, in cases where the bankrupt had any interest in the *suit. It [288 is, however, claimed that there are a few exceptions to the rule, one of which is, that when the firm was wholly insolvent (of which, however, there was no evidence in this case). Another is, where the bankrupt had no real interest, but was a mere trustee for another ; in which case, it is said, the suit may be prosecuted in the-name of the bankrupt for the use of the beneficiaries of the trust, and that it is not proper to bring the suit in the name of the assignee in bankruptcy. And, although there are some decided cases the other way, yet the weight of authorities is in favor of this exception, and there are some good reasons why it should exist. Chitty on Pleading, 28, says: “ Where the bankrupt, prior to his bankruptcy, has assigned over his beneficial interest in a chose in action to a third person, the action must be brought in the name of the bankrupt, and not of the assignee.” And so are the English authorities, and such we take the law to be in this country, notwithstanding the strong language of the act of Congress; for there would seem to be no good reason to require the assignee to sue where he had no beneficial interest, and could take no benefit by the judgment.
The defendant in the Commercial Court, rightfully claiming that if William Holliday was improperly.joined as one of the plaintiffs (when the assignee should have been the proper person to sue), no *289 judgment could be rendered against him, proved the bankruptcy of William Holliday.
The plaintiffs in the commercial court, in this state of the case, undertook to prove that before William Holliday became bankrupt, he had transferred all his beneficial interest in the note and draft to Thomas and Lewis Holliday, and that William was a naked trustee for Thomas and Lewis Holliday, and that therefore he might be properly joined in the action with the other two payees for their use. We think that if the plaintiffs had succeeded in establishing the fact of the assignment before the bankruptcy, they were the proper plaintiffs, and could have recovered in the namo of William, Thomas, and Lewis, for the use of Thomas and Lewis; and that such recovery would, if such assignment had actually 289] been made, *have been a protection to the defendant against any other suit in the name of the bankrupt’s assignee.
The question therefore is, was there any evidence — legal, evidence — showing that William had made such assignment before he became bankrupt?
A paper was introduced by the plaintiffs purporting to be an assignment, dated September 10, 1839, and a witness testified that the signature to that paper was in the handwriting of William Holliday, but knew nothing more about the matter. Is the paper thus proved to be executed by William any evidence that it was executed on the 10th of September, 1839, before he became bankrupt, and before the passage of the bankrupt act?
’The time at which this instrument was executed becomes a very material question. Admitting the execution of the paper, and that it passed all the interest which William had at the time of its actual execution, still the question is, does the paper itself prove that it was executed on the day on which it bears date ? It often becomes material on the trial of a case founded on a promissory note to determine when it was assigned, whether before or after it became due; if after it become due, the law allows the defendant or maker to set up many defenses against the assignee which he could not make if assigned before it became due. In Bueh case, the law presumes that the assignment was made on the day of i\xo> execution of the note. The reason, however, of such presumption is founded on the commercial character of the paper ; the indorsement transfers the legal title to the assignee, gives him a right of action in his own name, and the holder is not presumed to taka the pajDer, *290 clogged with equities and set-offs, which may render it of no value in his hands; hence the presumption that the assignment was made before duo.
In this ease, the instrument signed by William dots not transfer the legal title. It is not an indorsement on the note itself, but on a separate piece of paper, to which the defendant’s intestate is no party, and of which ho is not presumed *to have any knowl- [290 edge. The paper is produced as evidencq to rebut a perfect defense, m.ade out by the defendant; it is a private paper, made by the plaintiffs themselves, interested in the event of the suit, without which they must fail in the action; a paper which might be executed and dated at any time the parties chose, without a violation of any criminal law. The date is a most material part of the paper; and how much better evidence is it of the fact that it was executed on the day on which it bears date than would be the declaration of the parties themselves? Is it anything more than such declaration ? The paper may be all right, but we think that to make a paper executed by the plaintiffs themselves evidence that it was made on the day on which it bears date, would be to allow the parties to make a case by their own declarations.
The case of Baker et al. v. Blackburn, 5 Ala. (new series), 417, is a case almost precisely in point. It was an action of trespasss by the plaintiffs in error. Upon the trial, the plaintiffs, to prove their right to maintain their joint action, offered in evidence the copy of a deed which bore date previous to the commencement of the suit, having laid the foundation for such secondary evidence. There was proof that the original deed was in the handwriting of the plaintiff, and purported to convey the locus in quo. The court refused to permit the copy to be read ; to which the plaintiffs excepted, and assigned that for error. Judge Ormond, in delivering the opinion, says: “In this ease,the deed offered in evidence purported to co nvey an interest in the land from one of the plaintiffs to the other, and was the'evidence of their right to maintain the action in their joint names ; to which deed the defendants were neither party nor privy. This was, in effect, an attempt to prove a fact by the declaration of the party in whose favor it was offered.”
In the case of Meldrum v. Clark, in error, found in 1 Morris (Iowa), 130, the same principle was decided.
In that case, the plaintiff in the court below, declared against *291, 292 the defendant in covenant. The declaration shows *that the [291 defendant, in consideration of having been paid for two certain tracts of land by plaintiff, bound himself to make a deed to the plaintiff for the same, so soon as defendant obtained a deed from the government. The defendant was in possession of the land, under a pre-emption claim. The defendant further bound himself, that if he sold his claim, he would take a bond from the purchasers, binding him to convey to the plaintiff that portion of the land which the defendant had sold to plaintiff. The breach assigned was, that defendant had sold his claim, but had not taken a bond from the purchaser to make title to plaintiff
The defendant put in a plea of performance. On the trial, the defendant offered in evidence, a bond taken from the purchaser, bearing date prior to the suit being brought against him, but offered no evidence to show that such bond was actually executed before suit brought. The plaintiff contended that the date of the bond was not prima facie evidence of its real date, and the court below, in substance, so charged the jury. The question was, whether the court below were right in the charge. Chief Justice Mason, in sustaining the opinion of the court, says : “ The main point in the case, is that in relation to the date of the bond purporting to be taken by Meldrum from the person to whom he sold ; performance had been pleaded, and to sustain this plea, a bond was offered in evidence, dated anterior to the commencement of the suit. The time of the execution of the bond becomes a material fact. And how was this fact proposed to be proved ? By the date of the instrument itself, to which Clark was neither party nor privy. There is no doubt, but as between parties to the instrument, this date would raise a legal presumption of the time of its execution. It amounts to a mutual admission, in such a shape as to become legal testimony, but to permit the defendant and a third person to make evidence between themselves that shall bind the plaintiff, without his consent or knowledge, would be overthrowing one of the fundamental and most salutary rules of evidence.
292] *“ Suppose the bond had been without date, and that subsequently the parties thereto had, under their hands and seals, executed a separate instrument, declaring the bond to have been executed on a particular day: would this have been competent evidence against Clark ? If this would be evidence, why not all the evidenco in the case be manufactured in the same way?”
*293 See also the opinion of Slidell, J., in Murray v. Gibson, 2 La. 313.
There are indeed many cases in making title, in which the deed would be evidence of the time of its own execution, but this, we think, is not one of those cases. The counsel for the defendants in error, have furnished us with no authority on this point. They say, however, that neither the date of the note, nor draft was proved, hut it must be remembered that those papers were executed by the defendant’s intestate, and that he put the dates to those papers. But this assignment was executed by the plaintiffs. They made it, and no evidence was offered to show that they had ever had possession of it, until offered in evidence at the trial.
There were several other grounds upon which a reversal of this judgment is claimed, one of which is, that the deposition of Marks, offered in evidence, ought to have been ruled out. We think that deposition was properly admitted, after striking out the part which was rejected by the court. We think the word “protest,” in its popular sense, does not mean the paper only, but when a witness says the defendant was duly notified of the protest, he means the demand and refusal to pay. It is, however, unnecessary to consider this point, as we think there was no evidence before the Commercial Court of Cincinnati, that the assignment was made before decree of bankruptcy, and that the plaintiffs were not entitled to recover; and, in coming to this conclusion, we do not mean to say that the fact of such assignment, and the time when made, may not be shown by the plaintiffs. If such fact, as a fact, were proved, the plaintiffs, so far as that point is concerned, would be entitled to recover.
*The judgment of the district court, and the Commercial Court [293 is reversed, and the case remanded to the court of common pleas for further proceedings.